## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**THE DEWEY STREET CHURCH OF**
**CHRIST D/B/A CHURCH OF CHRIST**                                    **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 2:19-CV-12-KS-MTP**

**CHURCH MUTUAL INSURANCE**
**COMPANY**                                                          **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court rules as follows:

- The Court **grants in part and denies in part** Defendant's Motion to Exclude [84] the expert testimony of Stephen Lott;

- The Court **grants in part and denies in part** Defendant's Motion to Exclude [86] the expert testimony of Chris Tremaine;

- The Court **denies** Defendant's Motion for Summary Judgment [90] as to compensatory damages; and

- The Court **grants** Defendant's Motion for Partial Summary Judgment [88] as to Plaintiff's bad faith and extra-contractual damage claims.

### I. BACKGROUND

On January 20, 2017, a tornado damaged a building belonging to Plaintiff, The Dewey Street Church of Christ. Defendant, Plaintiff's insurer, issued a payment on March 28, 2017, in the amount of $17,850.83 for the damage caused by the tornado. Defendant partially denied Plaintiff's claim, based on an independent adjuster's finding that some of the claimed damage was actually from a previous claim, after a storm in July 2015.

In July 2017, Plaintiff submitted an estimate from a public adjuster, Stephen Lott, and Defendant reopened the claim. Lott estimated the total damage caused by the January 2017 tornado at just over $150,000.00. Defendant asked its independent adjuster, Billy Little, to re-inspect the property with Lott. In November 2017, Little and Lott re-inspected the property, but Little ultimately did not agree with all of Lott's estimate. Defendant issued a second payment of $8,224.57, based on Little's findings.

Plaintiff filed this suit against Church Mutual, alleging that it breached its policy in bad faith by failing to pay all that is due under the policy. Plaintiff demands compensatory and punitive damages. Defendant filed several dispositive motions, which the Court now addresses.

## II. MOTION TO EXCLUDE TESTIMONY OF STEPHEN LOTT [84]

Defendant filed a Motion to Exclude [84] opinion testimony by Stephen Lott, in which it presented several different arguments. Before the Court can address Defendant's arguments, it must address the related issue of how the amount of Plaintiff's loss is determined under the policy.

### A.    *The Policy's Terms*

The policy gives Defendant the option of electing whether it will "[p]ay the value of lost or damaged property" or "[p]ay the cost of repairing or replacing the lost or damaged property." Exhibit B to Motion to Exclude at 87, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020),

ECF No. 84-2. It appears to be undisputed that Defendant elected to pay the "cost of repairing or replacing the lost or damaged property." *Id.* That cost is determined by reference to the "Valuation Condition." *Id.* The Valuation Condition provides that "the value of Covered Property in the event of loss" is determined by "Replacement Cost (without deduction for depreciation) as of the time of loss or damage," but that the policyholder can elect to have the loss settled on an "Actual Cash Value" basis. *Id.* at 88. "'Actual Cash Value' means the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, less allowance for deterioration and depreciation, including obsolescence." *Id.* at 91.

If payment is made on a Replacement Cost basis, Defendant is not obligated to make a payment "1) [u]ntil the lost or damaged property is actually repaired or replaced; and 2) [u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." *Id.* at 88-89. Moreover, the policy provides that Defendant "will not pay more for loss or damage on a Replacement Cost basis than the least of 1) the policy limit; 2) the "cost to repair or replace. . . the lost or damaged property with other property . . . [o]f comparable material and quality;" or 3) the "amount you actually spend that is necessary to repair or replace the lost or damaged property." *Id.* at 89.

**B.**   ***Expert Testimony***

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise

if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins*, 121 F.3d at 989 (punctuation omitted).

> Not every guidepost in *Daubert* will necessarily apply . . . , but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the

4

facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

But the Court's role as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate." *Id.* at 595. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

5

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified, that the testimony is reliable, and that it is relevant to a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

## C.    *Lott's Testimony*

First, Defendant argues that Lott's estimate of the cost of repairs is irrelevant. Specifically, Defendant contends that Lott's estimate would not assist the jury in determining Plaintiff's damages because it does not account for some repairs that have already been completed and paid for.

"Expert testimony must be relevant, not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Here, the jury will be asked to determine the "cost of repairing or replacing the lost or damaged property." Exhibit B [84-2], at 87. Lott provided an estimate to repair damage allegedly caused by the 2017 storm. *See* Exhibit G to Motion to Exclude, *The Dewey St. Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 84-7. The estimate includes descriptions of damaged portions of the building, room-by-room, and the cost to repair them. *Id.*

It is indisputable that this testimony would assist the jury in determining the

6

cost of repairing or replacing Plaintiff's damaged property. It may be that Lott's testimony, standing alone, is insufficient to prove the exact amount still owed to Plaintiff under the policy, but that's a different question than whether it is relevant to the cost of repairing or replacing the damaged property. Likewise, as discussed below, it may be that *some* of Lott's estimate is irrelevant because Plaintiff can not prove causation, but that does not mean the entire estimate should be excluded.

Defendant cites *GuideOne Elite Ins. Co. v. Mount Carmel Ministries*, 2015 WL 7871033, at *7 (S.D. Miss. Dec. 3, 2015), *aff'd* 676 F. App'x 269 (5th Cir. 2017), where this Court, after a bench trial, declined to accept otherwise credible expert testimony because the expert failed to account for months of water intrusion following a tornado when preparing an estimate of property damage caused by the tornado. The Court said that attempting to delineate between damage caused by the tornado and damage caused by the months of neglect that followed "would be an arbitrary guess, lacking factual support." *Id.* However, the Court did not exclude the expert's testimony. It simply declined, as the fact-finder, to accept the testimony as an accurate estimate of the storm damage. Likewise, in this case, the jury is free to credit or discredit Lott's testimony, and the Court assumes Defendant will cross-examine him regarding the alleged problems with his estimate. Moreover, as noted above, Lott's testimony may not be sufficient on its own to prove the applicable measure of damages, but that doesn't make it irrelevant.

Defendant also argues that Lott's estimate is unreliable because it conflicts

with the testimony of Plaintiff's causation expert. In the Court's view, this goes to the relevance of the testimony, rather than its reliability. If Plaintiff has no admissible evidence that a particular item was damaged by the storm, then any testimony as to the cost to repair or replace that item would be irrelevant. Defendant has not provided an item-by-item argument on this question. Rather, it seeks a broad ruling that all of Lott's testimony is inadmissible. The Court declines to exclude all of Lott's testimony because some of it may be irrelevant. Likewise, the Court declines to sift through Lott's testimony on Defendant's behalf and compare it to the causation testimony from Plaintiff's other expert.

Finally, Defendant argues that Plaintiff did not disclose any opinions from Lott as to the cause of the damage, and that Lott is not qualified to provide such opinions. In response, Plaintiff did not address the disclosure argument, and it did not directly address the qualification argument. Plaintiff apparently contends that Lott is a non-retained expert, and that his testimony does not have to comply with Rule 702. Plaintiff also refers to Rule 602, even though it plainly provides that it does not apply to expert testimony. *See* FED. R. EVID. 602 ("This rule does not apply to a witness's expert testimony under Rule 703.").

Plaintiff designated Lott as an expert witness. Exhibit F to Motion to Exclude at 4, *The Dewey St. Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 84-6. Rule 26 contemplates that expert witnesses may either be "retained or specially employed to provide expert testimony

in the case" or not. FED. R. CIV. P. 26(a)(2)(B). The difference is that a retained expert must provide an expert report as required by Rule 26(a)(2), but a non-retained expert does not have to provide a report. *Id.*; *Moench v. Marquette Transp. Co. Gulf-Inland, LLC*, 838 F.3d 586, 594 (5th Cir. 2016); *Barnett v. City of Laurel*, 2019 WL 5788312, at *6 (S.D. Miss. Nov. 6, 2019). Rule 702, by its plain terms, applies to all expert witnesses, regardless of whether they were retained or not. FED. R. EVID. 702; *John C. Nelson Const., LLC v. Britt, Peters & Assocs., Inc.*, 2020 WL 5578692, at *1 n. 1 (S.D. Miss. Sept. 17, 2020); *Clark v. Lard Oil Co., Inc.*, 2019 WL 4305744, at *3 (S.D. Miss. Sept. 11, 2019). Therefore, if Plaintiff intends to offer expert testimony from Lott, that testimony must comply with Rule 702.

Rule 702 provides that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

A proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Likewise, lack of personal experience "should not ordinarily

disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702 . . . ." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). Moreover, an "expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Id.* at 168-69. Regardless of its source, "the witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *Id.* at 167.

Testimony that particular damage to Plaintiff's property was caused by a particular storm is outside the scope of permissible testimony for a lay witness because it requires specialized or technical experience, knowledge, or training. *See, e.g. O'Neil v. Allstate Prop. & Cas. Ins. Co.*, 2018 WL 4001978, at *1 (S.D. Miss. June 25, 2018); *Palmer v. Sun Coast Contracting Servs., Inc.*, 2017 WL 3222009, at *2-*3 (S.D. Miss. July 27, 2017). Plaintiff has the burden of demonstrating that Lott is qualified to provide expert testimony. *Fullwood*, 342 F.3d at 412. Plaintiff made no attempt to do so in response to Defendant's motion. Therefore, the Court finds that Plaintiff has not carried its burden of proving that Lott is qualified to provide expert testimony regarding the causation of damage to Plaintiff's property, and the Court grants Defendant's Motion to Exclude [84] as to any such testimony from Lott. The Court need not address the issue the of whether Plaintiff properly disclosed such testimony.

### III. MOTION TO EXCLUDE TESTIMONY OF CHRIS TREMAINE [86]

Defendant filed a Motion to Exclude [86] opinion testimony by Plaintiff's expert, Chris Tremaine, who provided an estimate of the cost to repair damage to Plaintiff's building. First, Defendant argues that Tremaine's estimate is irrelevant to the measure of damages in this case because 1) he did not account for repairs that Plaintiff had already made and which Defendant had already paid for; 2) he did not provide an estimate of the cost to repair only those items which Plaintiff's causation expert says were damaged by the storm; and 3) he did not provide an estimate of the cost to repair the building from its current condition or consider the church's actual cost in making repairs.

The Court rejects these arguments for the same reasons it rejected similar arguments with respect to Lott's testimony. Tremaine's testimony may not be sufficient, by itself, to prove the applicable measure of damages in this case, but it is indisputably relevant to Plaintiff's damages. Defendant will have an opportunity to cross-examine Tremaine and elicit testimony concerning the alleged shortcomings in his estimate.

Defendant also argues that Tremaine is not qualified to provide testimony regarding causation of the alleged damage to Plaintiff's building. In response, Plaintiff contends that Tremaine is qualified to provide expert testimony regarding the "cost of repair in accordance with the industry standards and practices."

As noted above, testimony that particular damage to Plaintiff's property was

caused by a particular storm is outside the scope of permissible testimony for a lay witness because it requires specialized or technical experience, knowledge, or training. *See, e.g. O'Neil*, 2018 WL 4001978 at *1; *Palmer*, 2017 WL 3222009 at *2-*3. Plaintiff has the burden of proving that Tremaine is qualified to provide expert testimony. *Fullwood*, 342 F.3d at 412. Plaintiff did not attempt to do so, and, apparently, Plaintiff does not intend to introduce such testimony. Therefore, the Court finds that Plaintiff has not carried its burden of proving that Tremaine is qualified to provide expert testimony regarding the causation of damage to Plaintiff's property, and the Court grants Defendant's Motion to Exclude [86] as to any such testimony from Tremaine. The Court need not address the issue the of whether Plaintiff properly disclosed such testimony.

### IV. MOTION FOR SUMMARY JUDGMENT [90]

Defendant filed a Motion for Summary Judgment [90], arguing that Plaintiff can not prove its claim for compensatory damages caused by the 2017 storm. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)

(punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Defendant argues that Plaintiff has not provided any estimate of the damage caused by the 2017 storm that has not already been repaired and paid for. Defendant contends that Tremaine's estimate includes items already repaired, general conditions for a contractor that was never retained, and additional damage that Plaintiff's causation expert did not identify as being caused by the 2017 storm.

 "Monetary damages are a remedy for, not an element of, breach of contract," but "[w]ithout proof of actual monetary damages, a plaintiff cannot recover compensatory damages under a breach-of-contract action." *Business Communs., Inc.*

13

*v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012). Therefore, if a party seeks monetary damages as a remedy for a breach of contract, they "must put into evidence, with as much accuracy as possible, proof of the damages being sought." *Id.* Phrased differently, "a plaintiff is required to place into evidence such proof of damages as the nature of his case permits, with as much accuracy as is reasonably possible for him." *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986).

The record contains sufficient evidence to prove Plaintiff's alleged damages with a reasonable degree of accuracy. Defendant admits that Plaintiff provided estimates that *include* the damage allegedly caused by the 2017 storm,[1] but Defendant contends that those estimates are *over*-inclusive, incorporating other damages which Plaintiff's causation expert did not identify as having been caused by the 2017 storm.[2] If all this evidence were presented at trial, a jury could determine which damages were caused by the storm. Therefore, Plaintiff presented sufficient evidence of its damages to survive summary judgment.

Regardless, "where a suit is brought for a breach of contract, and the evidence sustains the claim, the complainant is entitled to recover at least nominal damages for the failure of the defendant to carry out his agreement." *Banks*, 90 So. 3d at 1226;

---

[1] *See, e.g.* Exhibit F to Motion to Exclude Expert Testimony, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 86-6; Exhibit G [84-7].

[2] *See* Exhibit D to Motion to Exclude Testimony, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 84-4.

*see also First Miss. Bank of Commerce v. Latch*, 433 So. 2d 946, 951 (Miss. 1983) (quoting *Consol. Am. Life Ins. Co. v. Covington*, 297 So. 2d 894 (Miss. 1974)); *Callicott v. Gresham*, 161 So. 2d 183, 186 (Miss. 1964). Even if Plaintiff cannot prove that it sustained any monetary damages, it is still entitled to recover nominal damages if it proves that Defendant breached the policy.

For all these reasons, the Court **denies** Defendant's Motion for Summary Judgment [90].

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT [88]

Defendant also filed a Motion for Partial Summary Judgment [88] as to bad faith and extra-contractual damages. An insured is only entitled to punitive damages if an insurer denied or delayed payment on a claim in bad faith. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008). "A bad faith claim is an independent tort separable in both law and fact from a contract claim." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015). To prove bad faith, an insured must show that the insurer denied or delayed payment on a claim "(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Broussard*, 523 F.3d at 628. Both elements are "questions of law to be decided by the trial judge." *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 233 (Miss. 2001).

An insurer has no arguable basis for denying or delaying payment on a claim if "nothing legal or factual would have arguably justified" its position. *Essinger v.*

*Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 272 (5th Cir. 2008). Conversely, an insurer has an arguable reason "if there is some credible evidence that supports [its] conclusions on the basis of which [it] acts." *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005). "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). The insurer bears the initial burden of demonstrating "that it had reasonable justifications, either in fact or in law, for its actions. Once an insurance company articulates an arguable or legitimate reason for its [actions], the insured bears the burden of demonstrating that the insurer had no arguable reason." *Essinger*, 529 F.3d at 272.

First, the Court must determine the basis of Plaintiff's bad faith claim. In the Complaint, Plaintiff generally alleged that Defendant refused to pay policy benefits, delayed payment of benefits, and failed to investigate the claim, all in bad faith. *See* Complaint at 6-7, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Jan. 18, 2019), ECF No. 1. In briefing, Plaintiff appears to have narrowed its claim. Now, Plaintiff only contends that Defendant denied payment for damage to a women's restroom in bad faith, and that Defendant failed to investigate alleged damage to a commercial sign in bad faith. *See* Memorandum in Opposition at 1, *The Dewey Street Church of Christ v. Church Mut.*

*Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 5, 2020), ECF No. 96.[3]

With respect to the women's restroom, Defendant presented evidence that it relied on an investigation conducted by an independent adjuster, Billy Little, "who reported to Church Mutual that interior damage to the rear women's restroom . . . remained from 2015." Exhibit B to Reply at 1-2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 19, 2020), ECF No. 108-1. Little's report provided: "The interior damage to the women's rear bathroom we noted in the 2015 report . . . ." *Id.* at 5. Although he did not specify the women's bathroom, Plaintiff's representative testified that he agreed that there was damage remaining from 2015 that had never been repaired. Exhibit C to Motion for Partial Summary Judgment at 4, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 88-3.

The Fifth Circuit has held that an insurer's reliance on an independent expert provides, "at the very least, an arguable basis for denying [a] claim." *Hans Const. Co., Inc. v. Phoenix Assur. Co. of New York*, 995 F.2d 53, 55 (5th Cir. 1993); *cf. Cas. Ins. Co. of Tennessee v. Bristow*, 529 So. 2d 620, 623 (Miss. 1988) (physician's statement provided arguable reason for insurer's actions). Little's report and opinion constituted "credible evidence" in support of Defendant's initial denial of Plaintiff's claim for

---

[3] Defendant argues that these narrowed bad faith claims are barred because Plaintiff first asserted them in response to Defendant's motion for partial summary judgment. The Court disagrees. Plaintiff's initial bad faith claims were phrased broadly enough to include the narrowed claims articulated in Plaintiff's briefing. In fact, that's the purpose of dispositive motions – to narrow the claims to what is truly in dispute.

damages to the women's bathroom. *Hood*, 532 F. Supp. 2d at 803. Therefore, the Court concludes that Defendant had an arguable reason to initially deny payment for the damage to the women's bathroom.

Plaintiff notes that Little's report and estimate from 2015 do not mention any damage to the women's bathroom. Exhibit 4 to Response to Motion for Partial Summary Judgment at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 5, 2020), ECF No. 95-4; Exhibit 5 to Response to Motion for Partial Summary Judgment at 3, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 5, 2020), ECF No. 95-5. Therefore, Plaintiff contends that Defendant had no arguable or legitimate basis to rely on Little's initial 2017 report.

Plaintiff has not cited any authority requiring an insurer to cross-reference an independent expert's report with a report he provided on a past claim to ensure that the current one is accurate. At best, Defendant's failure to recognize that Little did not, in fact, find any damage to the women's bathroom in 2015 was mere negligence. Even if Little's 2017 report was not enough to provide Defendant an arguable reason to deny coverage for the women's bathroom, Plaintiff has not provided evidence that Defendant acted with "malice or gross negligence in disregard of the insured's rights," *Broussard*, 523 F.3d at 628, or that Defendant committed an "intentional wrong, insult, or abuse . . . as constitutes an intentional tort." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 70 (5th Cir. 2014).

18

As for the church sign, Defendant presented evidence that "the sign was not included in the insured's initial notice of claim or pictures . . . received from the Church," and that it has not "subsequently been provided any pictures or other evidence of damage to the sign." Exhibit A [108-1], at 2. Defendant's claim notes include no mention of the sign. *Id.* at 15-35. However, Stephen Lott's estimate includes a line item for "Commercial sign" under the "General Conditions," at a replacement cost of $2,675.00. Exhibit 2 to Response to Motion for Partial Summary Judgment at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 5, 2020), ECF No. 95-2. Plaintiff provided this estimate to Defendant on July 28, 2017, several months after the loss, and Defendant reopened the claim. Exhibit A [108-1], at 23; Exhibit A to Motion for Partial Summary Judgment at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 88-1.

In a report provided after the claim was reopened, Defendant's independent adjuster, Billy Little, said: "Mr. Lott stated the sign replacement estimate for $2,675.00 had been submitted and requested payment based on the estimate." Exhibit 9 to Response to Motion for Partial Summary Judgmenat at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 5, 2020), ECF No. 95-9. However, Defendant's representative, Lynn Renlund, stated that "we have not subsequently been provided any pictures or other evidence of damage to the sign, and, although Mr. Little reported that Mr. Lott claimed an

19

invoice had been submitted, we have no record of it in Church Mutual's files." Exhibit A [108-1], at 2. Renlund testified that if Plaintiff never submitted an invoice demonstrating that it had, in fact, replaced the sign, Defendant "wouldn't have been able to make a payment for it." Exhibit C to Motion for Partial Summary Judgment at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 19, 2020), ECF No. 108-3. Plaintiff contends that in spite of any alleged failure to provide documentation, Defendant had a duty to investigate the claim for the sign and make a determination.

The Court finds that Plaintiff has not produced evidence that Defendant's failure to make a determination on the church sign[4] constituted "malice or gross negligence in disregard of the insured's rights," *Broussard*, 523 F.3d at 628, or an "intentional wrong, insult, or abuse . . . as constitutes an intentional tort." *James*, 743 F.3d at 70. Plaintiff's adjuster included the sign as a single line item in a multi-page damage estimate, but there is no evidence that Plaintiff ever provided Defendant with an invoice showing that it had actually replaced the sign. In fact, Lott testified that Plaintiff had already repaired or replaced the sign when he conducted his inspection. Exhibit B to Reply at 2, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. Aug. 19, 2020), ECF No. 108-2. Therefore, there

---

[4] The church sign was only $2,675.00 of Lott's $155,727.30 estimate – approximately 1.7%. Exhibit 2 [95-2], at 2. Moreover, it only constitutes 1.06% of the $251,847.86 estimate provided by Chris Tremaine. Exhibit G to Motion for Summary Judgment at 2, 25, *The Dewey Street Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP (S.D. Miss. July 22, 2020), ECF No. 90-7.

was nothing to investigate. Plaintiff only needed to provide a paid invoice,[5] and it is undisputed that it did not do so.

For these reasons, the Court finds that Plaintiff has failed to present sufficient evidence to create a triable issue with respect to its bad faith claim. The Court **grants** Defendant's Motion for Partial Summary Judgment [88] as to Plaintiff's bad faith and extra-contractual damage claims.

### VI. CONCLUSION

For these reasons, the Court rules as follows:

- The Court **grants in part and denies in part** Defendant's Motion to Exclude [84] the expert testimony of Stephen Lott;

- The Court **grants in part and denies in part** Defendant's Motion to Exclude [86] the expert testimony of Chris Tremaine;

- The Court **denies** Defendant's Motion for Summary Judgment [90] as to compensatory damages; and

- The Court **grants** Defendant's Motion for Partial Summary Judgment [88] as to Plaintiff's bad faith and extra-contractual damage claims.

SO ORDERED AND ADJUDGED this 4th day of December, 2020.

/s/     Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

---

[5] *See* Exhibit B [84-2], at 88-89.